**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | |
|---|---|
| **JOHN DAVID WALKER, JR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 5:09-01128** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

**M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case is presently pending before the Court on the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 17 and 19.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 5 and 8.)

The Plaintiff, John David Walker, Jr., (hereinafter referred to as "Claimant"), filed an application for DIB on April 8, 2005 (protective filing date), alleging disability as of December 2, 2003, due to three problem discs in his back (L4-S1), right leg numbness, and right hip problems. (Tr. at 85-87, 129, 147.) The claim was denied initially and on reconsideration. (Tr. at 74-76, 80-82.) On January 10, 2006, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 73.) The hearing was held on January 5, 2007, before the Honorable Richard L. Swartz. (Tr. at 433-56.) By decision dated February 8, 2007, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 47-54.) On May 21, 2008, the Appeals Council remanded the ALJ's decision and directed that the ALJ (1) articulate his credibility assessment, (2) further evaluate Dr. Vigo's medical

source statement, (3) further consider Claimant's RFC, and (4) obtain supplemental evidence from a vocational expert ("VE") on the effect of Claimant's limitations on the occupational base. (Tr. at 55-57.)

On December 10, 2008, the ALJ conducted a supplemental hearing. (Tr. at 457-71.) By decision dated January 8, 2009, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 18-30.) The ALJ's decision became the final decision of the Commissioner on August 26, 2009, when the Appeals Council denied Claimant's request for review. (Tr. at 7-10.) On October 15, 2009, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2009). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the

claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2009). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since December 2, 2003, his alleged onset date. (Tr. at 20, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from degenerative disc disease of the lumbosacral spine, which was a severe impairment. (Tr. at 21, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairment did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 25, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity for light exertional work as follows:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the [C]laimant should avoid the use of ladders; he should restrict odd movements to occasionally; and he should avoid concentrated exposure to cold, vibration, and hazards. .

(Tr. at 26, Finding No. 5.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 28, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE")

taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as an inspection worker, a line attendant, and a ticket taker, at the light level of exertion, and as a benchworker, an inspection worker, and an assembler, at the sedentary level of exertion. (Tr. at 29, Finding No. 10.) On this basis, benefits were denied from December 2, 2003, the alleged onset date, through June 30, 2006, the date last insured. (Tr. at 29, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on July 5, 1961, and was 47 years old at the time of the administrative hearing, December 10, 2008. (Tr. at 28, 85.) Claimant had an eighth grade, or limited education and

was able to communicate in English. (Tr. at 28, 147, 153.) In the past, he worked as a mobile home utility worker. (Tr. at 28, 101-02, 136-46.)

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in (1) assessing Claimant's RFC, (2) discrediting Claimant's testimony regarding the effects of his injuries, (3) discrediting the opinion of Claimant's treating physician, and (4) relying upon a hypothetical question to the VE, which did not fairly set out all the evidence regarding Claimant's impairment. (Document No. 17 at 6-10.) In response, the Commissioner asserts that substantial evidence supports the ALJ's decision and that Claimant's arguments are without merit. (Document No. 19 at 9-20.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Analysis.

1. RFC Assessment & Treating Physician Opinion.

Claimant alleges that the ALJ erred in assessing his RFC. (Document No. 17 at 6-8.) The Commissioner asserts that the ALJ's RFC assessment was consistent with the objective medical evidence of record, Claimant's conservative treatment plan, and the medical findings of the examining physicians. (Document No. 19 at 9-12.)

"RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record,"

5

including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2009). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

Opinions on a claimant's Residual Functional Capacity are issues that are reserved to the Commissioner. The Regulations state that:

> We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter, your residual functional capacity . . . or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

See 20 C.F.R. § 416.927(e)(2) (2009).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

The Regulations state that opinions on these issues are not medical opinions as described in

6

the Regulation dealing with opinion evidence (20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2)); rather, they are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e) and 416.927(e). For that reason, the Regulations make clear that "[w]e will not give any special significance to the source of an opinion on issues reserved to the Commissioner. . . ." Id. §§ 404.1527(e)(3) and 416.927(e)(3). The Regulations further provide that "[f]or cases at the Administrative Law Judge hearing or Appeals Council level, the responsibility for deciding your residual functional capacity rests with the Administrative Law Judge or Appeals Council." See 20 C.F.R. §§ 404.1545 and 416.946 (2009). However, the adjudicator must still apply the applicable factors in 20 C.F.R. § 416.927(d) when evaluating the opinions of medical sources on issues reserved to the Commissioner. See Social Securing Ruling ("SSR") 96-5p, 61 FR 34471, 34473 (1996).

      Social Security Ruling 96-5p makes a distinction between an RFC assessment, which is "the adjudicator's ultimate finding of 'what you can still do despite your limitations,'" and a "'medical source statement,' which is a 'statement about what you can still do despite your impairment(s)' made by an individual's medical source and based on that source's own medical findings." Id. SSR 96-5p states that "[a] medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." Adjudicators "must weigh medical source statements under the rules set out in 20 C.F.R. § 416.927, providing appropriate explanations for accepting or rejecting such opinions." Id. at 34474.

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2009). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2009). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination

of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2009). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2009). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2009). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

RFC Assessment.

As the Commissioner points out, the objective medical evidence reveals that following Claimant's fall from a ladder in December 2003, he had a normal pelvis, right hip, and lumbosacral spine. (Tr. at 21, 181-86.) On January 3, 2004, a MRI of the lumbar spine revealed degenerative disc

disease at L4-5 and L5-S1, and a mildly herniated disc centrally and slightly to the right at L5-S1. (Tr. at 21, 189, 192.) Dr. Weinsweig, M.D., a neurosurgeon, reviewed the MRI and recommended against surgical intervention. (Tr. at 21, 190.) A further MRI in May 2004, confirmed only minimal focal degenerative change. (Tr. at 325.) On April 2, 2004, Claimant's EMG and nerve conduction studies were normal. (Tr. at 21, 193-200.) Similarly, x-rays of Claimant's lumbar spine, pelvis, right hip, and chest, were normal. (Tr. at 320-22.) On October 18, 2004, Dr. Orphanos, an orthopaedic surgeon, diagnosed a severe contusion over the lumbosacral junction and pelvic area, mostly to the right. (Tr. at 22, 220.) He noted that no specific acute abnormalities were reported from the x-rays. (Id.)

The ALJ's RFC assessment also was supported by Claimant's conservative treatment, consisting of medication, work conditioning, and the recommendation of his treating physician, Dr. Vigo, to avoid heavy lifting. (Tr. at 22-23, 298, 306.) Claimant also underwent physical therapy, which helped to a fairly significant degree. (Tr. at 203, 394.)

Furthermore, the medical findings of the various examining physicians supports the ALJ's RFC assessment. Dr. Orphanos failed to find any definite neurological abnormalities, but noted straight leg raising with pain. (Tr. at 22, 218-30.) Dr. Weinsweig also noted that straight leg raising caused discomfort and his motor strength was grossly strong. (Tr. at 21, 232.) Dr. Landis noted that Claimant walked without a limp, was not using the crutch he carried, could heel and toe walk without difficulty, and despite some tenderness over the right sacroiliac joint, his ranges of motion were invalid and his symptoms were magnified. (Tr. at 23, 231-50.) Dr. Landis opined that Claimant could return to work at "some light to sedentary employment." (Id.) Furthermore, Dr. Guberman also noted that Claimant was able to walk without his crutch, there was no evidence of muscle weakness,

and he could walk on his heels and toes. (Tr. at 24, 340-54.)

Finally, the treatment notes from Claimant's physical therapists and the state agency medical consultant support the ALJ's RFC assessment. Claimant's physical therapists opined that Claimant "could increase his overall physical demand level to a light or higher." (Tr. at 25, 377.) The therapists further noted tat Claimant exhibited self-limiting behaviors and may be able "to perform at a higher physical and functional level than he currently perceived or demonstrated on this date." (Tr. at 25, 380.) Dr. Egnor, the state agency reviewing consultant, opined that Claimant could perform a limited range of light work. (Tr. at 27, 331-39.) The ALJ accorded this opinion great weight because it was consistent with the preponderance of the medical evidence, Claimant's routine and conservative treatment, and the lack of diagnostic testing evidence demonstrating profound functional limitations. (Tr. at 27.) Dr. Egnor relied on the treatment records and reports of Drs. Weinsweig, Orphanos, Landis, Vigo, and Biasas, as well as noted from Welch Community Hospital and the Appalachian Rehabilitation Center, in reaching his conclusions. (Tr. at 27, 338.)

Accordingly, the Court finds that the ALJ's assessment of Claimant's RFC is supported by substantial evidence of record.

Treating Physician Opinion.

Claimant also alleges that the ALJ erred in according significant weight to only a part of Dr. Vigo's opinion. (Document No. 17 at 8.) The Commissioner asserts that the ALJ properly rejected part of Dr. Vigo's opinion because his sit, stand, and walk limitation conflicted with the objective medical evidence. (Document No. 19 at 12-16.)

In his decision, the ALJ gave significant weight to only part of Dr. Vigo's opinion. (Tr. at 27.) The ALJ acknowledged Dr. Vigo's extensive longitudinal treatment of Claimant and found that

11

for the most part, his functional limitations were consistent with the other medical evidence of record. (Tr. at 27.) The ALJ however, found no objective or credible evidence to support Dr. Vigo's conclusion that Claimant could sit, stand, or walk for a total of two hours in an eight-hour workday and for only 30 minutes at a time. (Id.)

Dr. Vigo opined that Claimant was capable of frequently lifting ten pounds and occasionally lifting 20 pounds. (Tr. at 26, 360.) The ALJ adopted these restrictions. (Tr. at 26.) Likewise, both Dr. Vigo and the ALJ assessed occasional postural limitations. (Tr. at 26, 361.) In addition to Dr. Vigo's opinion, the ALJ also assessed an avoidance of vibrations (Tr. at 26, 362.), ladders, hazards, and temperature extremes. (Tr. at 26.) Though Dr. Vigo relied on the January 3, 2004, MRI results in assessing the standing, walking, and sitting limitations, the ALJ noted that Dr. Weinsweig recommended no surgical intervention based on the same MRI report. (Tr. at 28, 190.) Furthermore, Dr. Vigo's restrictive limitations are inconsistent with his treatment notes, which reflected only a limitation of heavy lifting. (Tr. at 26, 298.) As the Commissioner points out, reliance on physical therapist notes regarding a sit/stand option is not persuasive as they are not acceptable medical sources. Furthermore, Claimant did not complete his rehabilitative program. (Tr. at 204.) Though Claimant alleges that Dr. Landis and Dr. Biasis concluded that Claimant remained temporarily disabled as a result of his injury, the doctors actually found evidence of symptom magnification and recommended a pain management program. (Tr. at 236.) Accordingly, based on the foregoing, the undersigned finds that the ALJ properly failed to accord significant weight to Dr. Vigo's sit, stand, and walk limitations.

2. Credibility Assessment.

Claimant next alleges that the ALJ erred in assessing his credibility. (Document No. 17 at

8-9.) Claimant asserts that the ALJ's failure to assess properly his RFC formed the basis to discredit his testimony. (Id. at 8.) He asserts that his reported symptoms were consistent with Dr. Vigo's assessment, the report his rehabilitation providers, and the assessments of the state agency medical consultants. (Id. at 9.) The Commissioner asserts that the objective medical evidence did not support Claimant's allegations of disabling limitations. (Document No. 19 at 17-18.) The Commissioner further asserts that Claimant presented with self-limiting behavior and symptom magnification. (Id. at 18.)

A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2009); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated. Id. at 595. When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2009). Additionally, the Regulations provide that:

[w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:

> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2009).

SSR 96-7p repeats the two-step regulatory provisions:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit

> the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920)(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ

15

rejects allegations of pain <u>solely</u> because the pain itself is not supported by objective medical evidence.

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 26-28.) The ALJ found at the first step of the analysis that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. at 27.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 27-28.) At the second step of the analysis, the ALJ concluded that "[C]laimant's symptoms concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. at 27.)

In his decision, the ALJ found that Claimant was not credible for a few of reasons. (Tr. at 27.) First, the ALJ noted that because Claimant filed a worker's compensation claim, he appeared to have been motivated by secondary gain. (<u>Id.</u>) Second, the ALJ noted that the medical evidence indicated symptom magnification. (<u>Id.</u>) As noted above, several of Claimant's physicians opined that he exaggerated his symptoms. Third, the ALJ noted that Claimant showed inconsistencies in his symptoms. (<u>Id.</u>) For example, though Claimant reported the need of a crutch to ambulate, several physicians observed that he did not the assistive device. (<u>Id.</u>) Similarly, the physicians observed that he did not really walk with a limp and that there were invalid ranges of motion. (<u>Id.</u>) Finally, his physical therapists noted that Claimant demonstrated self-limiting behavior and possibly could function at a higher level. (<u>Id.</u>)

Accordingly, the Court finds that the ALJ properly considered the factors set forth in the

Regulations in assessing Claimant's credibility and that his finding that Claimant was not credible is supported by substantial evidence.

3. <u>Hypothetical Question</u>.

Finally, Claimant alleges that the ALJ erred in relying on the testimony of the VE when the ALJ's hypothetical did not set forth the limitations assessed by Dr. Vigo. (Document No. 17 at 9.) The Commissioner asserts that because the ALJ properly found that Dr. Vigo's sit/stand limitations were not supported by the evidence of record, the ALJ was not required to rely on the VE's testimony that employment would be precluded with such limitations. (Document No. 19 at 19-20.)

To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. <u>Walker v. Bowen</u>, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities – presumably, he must study the evidence of record to reach the necessary level of familiarity." <u>Id.</u> at 51. Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record. <u>See</u> <u>Chrupcala v. Heckler</u>, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. <u>See</u> <u>Benenate v. Schweiker</u>, 719 F.2d 291, 292 (8th Cir. 1983).

In his hypothetical questions to the VE, the ALJ included all of Claimant's impairments that were supported by the record. The ALJ posed a hypothetical encompassing Dr. Vigo's limitations. Though the VE testified that such a person could not perform any jobs with Dr. Vigo's sit and stand

17

limitations, as discussed above, the ALJ properly found that those limitations were not supported by substantial evidence of record. Consequently, the ALJ was not required to rely on the VE's testimony that employment was precluded. Accordingly, the Court finds that the ALJ posed a proper hypothetical to the VE and was entitled to rely on his testimony. As such, Claimant's arguments in this regard are without merit and the ALJ's decision to rely on the VE's testimony is supported by substantial evidence.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 17.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 19.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court..

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: March 31, 2011.

R. Clarke VanDervort
United States Magistrate Judge